# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# FORT WAYNE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | CAUSE NO.: 1:17-CR-39-HAB-SLC |
| ADDONIS CARSWELL | |

**OPINION AND ORDER**

The Defendant, Adonnis Carswell, was indicted on charges that he possessed with intent to distribute heroin, and that he possessed a firearm in furtherance of that drug trafficking crime. He is also charged with being a felon in possession of a firearm. This matter is before the Court on the Defendant's Motion to Suppress Evidence [ECF No. 86], filed on May 19, 2019. The Defendant requests that the Court suppress all evidence obtained during the June 30, 2017, search of a residence on Green Road in New Haven, Indiana.

The search was conducted pursuant to a warrant. The Defendant argues that the magistrate judge issued the warrant in error because the application for the warrant, including the attached affidavit, did not establish probable cause that evidence of drug trafficking would be found inside the residence.

The Government maintains that a practical, common sense reading of the totality of the affidavit established probable cause to issue the search warrant for the Green Road residence, as it provided sufficient detail to suggest that the Defendant possessed drugs, was dealing drugs, unlawfully possessed a firearm, and was living at the residence. The Government submits that, alternatively, if the Court reaches a different conclusion

regarding the existence of probable cause, the fruits of the search would be admissible because the officers acted in good faith in executing the search warrant.

## SEARCH WARRANT AFFIDAVIT

On June 29, 2017, ATF Task Force Officer (TFO) Caleb Anderson provided a sworn application and affidavit, and United States Magistrate Judge Paul R. Cherry issued a search warrant for the premises of XXXX Green Road, New Haven, Indiana.

The affidavit provided the following grounds for asserting that XXXX Green Road was the primary residence of Adonnis Carswell: Spillman records listed Carswell as living at the residence; on June 26, 2017, Carswell told a New Haven Police Officer, during a traffic stop, that it was his residence; on June 27, 2017, TFO Anderson observed Carswell walking with his dog and two children on Green Road south of the driveway at XXXX Green Road; and, a black SUV observed in the driveway of the residence on June 26, 27, 28 and 29, 2017, matched the description of a vehicle that BMV records showed was registered to Carswell.

Another person, Dereka Evans, was also connected to the residence through various observations laid out in the affidavit. Evans accompanied Carswell in a white passenger car to pick up a vehicle that had been towed after a recent traffic stop. A white passenger car was observed on multiple dates and times at the XXXX Green Road residence. Receipts containing Evans's name were located in the trash bins outside the XXXX Green Road residence.

The affidavit provided background information with respect to Carswell and Evans. It described an August 2014 Indiana State Police investigation involving the

intercepted shipments of packages of marijuana to Carswell's residences and his place of business. In March 2015, an undercover postal inspector delivered a package of marijuana, which had been equipped with a parcel beacon and GPS unit, to one of these addresses in Fort Wayne. ISP had also obtained a search warrant for the residence. The package was monitored by undercover surveillance. The electronic devices were undisturbed until after a vehicle arrived at the house. The vehicle was driven by a black female, later identified as Evans. Carswell and two children were passengers in the vehicle.

Carswell picked up the package and took it inside the residence. When the parcel's alarm sounded a short time later, indicating that the package was opened, ISP executed the search warrant. The search uncovered the package of marijuana, which had been originally wrapped in green saran wrap and axle grease. Officers also located $7,240 in United States currency, a firearm, a body armor vest, documents and mail with Evans' name, documents and mail with Carswell's name, three drug ledgers, multiple cellular phones belonging Carswell, a digital scale with cocaine residue, plastic bags, rubber gloves, and a plate with cocaine residue.

TFO Anderson's affidavit then turned to more recent events. He detailed the May 2, 2017, arrest of an individual on an indictment for being a felon in possession of a firearm. The residence where he was arrested contained evidence of drug trafficking, which TFO Anderson detailed. TFO Anderson interviewed the arrestee, who admitted to dealing narcotics, and identified Carswell and Carswell's brother as his suppliers. The arrestee noted that Carswell had been supplying the brother with drugs. The arrestee had

3

just purchased additional drugs two days prior to his arrest, and he had obtained them from the brother. He made these purchases about once a week.

TFO Anderson's affidavit provided the results of surveillance that he conducted at XXXX Green Road on June 26, 2017. At 5:00 p.m. on this date, he observed a black SUV parked near the garage. It appeared to be the black GMC Yukon registered to Carswell. He also noticed that two trash bins had been placed at the end of the driveway along Green Road for pick up. TFO Anderson came back to XXXX Green Road near midnight and observed that the trash bins were still at the roadway for pickup. He removed several bags and took them to the New Haven Police Department for inspection.

TFO Anderson located the following items in the trash: a gray plastic bag that contained three opened food saver bags, two one-gallon ziplock bags that contained residue that field-tested positive for cocaine, two sandwich bags that field-tested positive for cocaine, two pairs of latex gloves, packaging that looked like a kilogram wrapper for cocaine that field-tested positive for cocaine. The kilogram packaging included green plastic saran wrap, which matched the photographs of the packaging used in the prior ISP case. TFO Anderson's affidavit proceeded to explain the significance of the various items, based on his training and experience. In sum, the items led TFO Anderson to believe that Carswell was distributing cocaine on a large-scale level.

A gray plastic bag inside a Champs store bag contained crystals that TFO Anderson recognized through training and experience as crystal methamphetamine. The substance field-tested positive for methamphetamine. TFO Anderson collected about three grams of the substance, which he averred was a larger quantity of

4

methamphetamine than any user would likely throw away. Three grams of methamphetamine had a value of about $300.

Additionally, the trash included a firearms receipt dated April 19, 2017, from a local firearm dealer. The receipt showed that Evans purchased four boxes of ammunition and a CZ Scorpion EVO 3 pistol. Defendant has two prior felony convictions. TFO Anderson advised that it was common, in his training and experience, for drug traffickers and convicted felons to have close associates, including girlfriends, purchase guns for them. The trash also contained a document for American Freight furniture with Evans' name on it.

**ANALYSIS**

When, as here, an "affidavit is the only evidence presented to the warrant-issuing magistrate, 'the warrant must stand or fall solely on the contents of the affidavit.'" *United States v. Koerth*, 312 F.3d 862, 866 (7th Cir. 2002) (quoting *United States v. Roth*, 391 F.2d 507, 509 (7th Cir. 1967)). "A magistrate's 'determination of probable cause should be paid great deference by reviewing courts.'" *Illinois v. Gates*, 462 U.S. 213, 236 (1983) (quoting *Spinelli v. United States*, 393 U.S. 410, 419 (1969)). "[T]he duty of a reviewing court is simply to ensure that the magistrate had a substantial basis for concluding that probable cause existed." *Id.* at 238–39 (quotation marks, brackets, and ellipsis omitted).

The "central teaching of [Supreme Court] decisions bearing on the probable cause standard is that it is a 'practical, nontechnical conception.'" *Gates*, 462 U.S. at 231 (quoting *Brinegar v. United States*, 338 U.S. 160, 176 (1949)). "[P]robable cause is a fluid concept— turning on the assessment of probabilities in particular factual contexts—not readily, or

even usefully, reduced to a neat set of legal rules." *Id.* at 232. "Probable cause is established when, based on the totality of the circumstances, the affidavit sets forth sufficient evidence to induce a reasonably prudent person to believe that a search will uncover evidence of a crime." *United States v. Peck*, 317 F.3d 754, 756 (7th Cir. 2003). For this reason,

> The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.

*Gates*, 462 U.S. at 238.

The magistrate judge, by issuing the search warrant for XXXX Green Road, concluded that there was a fair probability that evidence of drug and firearm crimes would be located on the premises. Carswell argues that this was erroneous because the totality of circumstances did not create a probability that evidence of trafficking cocaine and methamphetamine would be found at XXXX Green Road. This Court does not agree with Carswell and concludes that the magistrate judge had a substantial basis for issuing the warrant.

Carswell's presentation violates the principal that probable cause "is based not on individual facts in isolation but on the totality of the circumstances known at the time a warrant is requested." *United States v. Fifer*, 863 F.3d 759, 764 (7th Cir. 2017) (quoting *United States v. Aljabari*, 626 F.3d 940, 944 (7th Cir. 2010)). For example, Carswell isolates the New Haven Police Department report of the June 26, 2017, traffic stop wherein it was reported that Carswell provided XXXX Green Road as his address. He argues that even

6

if the report was accurate in this regard, the "information does little to establish probable cause that drugs and other evidence of drug trafficking were to be found at XXXX Green Road." (Mem. in Supp. 6, ECF No. 87.) Although this is a true statement, it is beside the point. Other information in TFO Anderson's affidavit provided the basis to conclude that evidence of drug trafficking and unlawful possession of a firearm would be located at XXXX Green Road. Likewise, while the background facts pertaining to Carswell's previous drug dealing activity did not establish that he was currently dealing drugs, it was proper for the magistrate judge to consider the activity as part of the totality of circumstances. *See United States v. Caldwell*, 423 F.3d 754, 760–61 (7th Cir. 2005). That totality included not only information from a source who advised that Carswell was one of his suppliers of cocaine and heroin, but also drug residue and packaging material recovered from trash outside his house just three days earlier.

Carswell argues that the confidential human source's statements about him did not help establish probable cause. He argues that there is no information explaining how the source knows that Carswell's brother was obtaining drugs from Carswell. Although the source made this claim, TFO Anderson's affidavit also states that the source, after he was arrested with marijuana, crack cocaine, heroin, and fentanyl, identified *both* Carswell and Carswell's brother as his suppliers. The source provided this information based on his first-hand knowledge and experience. Although he was a newly arrested informant, which subjects him to greater scrutiny, *see United States v. Olson*, 408 F.3d 366, 370 (7th Cir. 2005), the magistrate judge was also entitled to consider that he had made a statement against penal interest, *see United States v. Leidner*, 99 F.3d 1423, 1420–30 (7th Cir. 1996),

7

and that his recent arrest gave him an incentive to supply the police with accurate information in hopes of receiving lenient punishment for his own crimes, *see Koerth*, 312 F.3d at 870. Also relevant is that the source was not an anonymous tipster but was known to TFO Anderson and could be held responsible if he gave misleading information. *See Koerth*, 312 F.3d at 871. In any event, TFO Anderson did not rely on the source's statement alone. He conducted surveillance and performed a trash pull. This investigation pointed TFO Anderson to the Green Road residence and to the existence of drugs and drug trafficking materials coming from the residence.

Carswell's arguments also ignore the rule that the search warrant must stand or fall solely on the contents of TFO Anderson's affidavit. For example, Carswell asserts that, with respect to the trash pull, there were "problems with the allegations made in the warrant application affidavit," and posits that one of these problems was that June 26, 2017, was a Monday, but trash pickup for Green Road was Wednesday. (Mem. in Supp. 6–7.) He suggests that the New Haven officers who assisted with the trash pull should have known that the trash had been "sitting out in the open for enough time that any number of people would have had access to it." (*Id.* at 7.) While noting that Carswell has not presented evidence to support these assertions about the trash pick-up schedule, it would be improper for this Court to consider it in any event. The question is whether it was reasonable for the magistrate judge to infer that items inside trash bins placed outside a particular residence for collection came from that residence. To that, the answer is clearly yes. Applying an unlikely theoretical possibility that someone unconnected to

the residence threw his trash in the bins cannot defeat probable cause. *See Fifer*, 863 F.3d at 765.

Carswell's remaining arguments about the trash are likewise unavailing. He acknowledges that both evidence of drugs and evidence that Evans lived at the residence were recovered from the trash. However, because the drug evidence was located in smaller plastic bags, and the items with Evans' name on them were not in these *same* plastic bags, there was not a sufficient basis for the warrant. This argument ignores the "factual and practical considerations of everyday life" *Gates*, 462 U.S. at 231, and improperly attempts to impose a hypertechnical standard to the issuance of search warrants. Contrary to Carswell's assertion, neither was it necessary for documents in the trash to contain Carswell's name. Carswell had already been sufficiently connected to the residence through other means, including through Carswells' connection to Evans.

Having read the Affidavit as a whole in a realistic and common sense manner, the Court finds that substantial evidence supports the issuing judge's determination of probable cause and, thus, defers to that conclusion. *See United States v. Sutton*, 742 F.3d 770, 773 (7th Cir. 2014) (setting forth the deferential standard owed to an issuing judge when a search is authorized by a warrant). Because the Court has concluded that the search warrant was supported by probable cause, it need not address the Government's alternative argument that, even if the Affidavit was deficient, the evidence seized from Carswell's home would have been admissible under the good-faith exception to the exclusionary rule. *See United States v. Leon*, 468 U.S. 897, 922 (1984); *United States v. Mitten*, 592 F.3d 767, 770 (7th Cir. 2010).

## CONCLUSION

For the reasons set forth above, the Court DENIES the Defendant's Motion to Suppress [ECF No. 86]. The search warrant affidavit [ECF No. 60] is to be UNSEALED. The final pretrial conference set for September 3, 2019, at 10:00 AM and the jury trial set to begin on September 17, 2019, at 9:00 AM, both before Judge Holly A. Brady, are CONFIRMED.

SO ORDERED on June 4, 2019.

                                              s/ *Holly A. Brady*
                                              JUDGE HOLLY A. BRADY
                                              UNITED STATES DISTRICT COURT